IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| HOLLY S. JAY, | ) |
|        Plaintiff, | ) |
| vs. | ) Civil Action<br>) No. 08-3188-CV-S-JCE-SSA |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ) |
|        Defendant. | ) |

**O R D E R**

Plaintiff is appealing the final decision of the Secretary denying her application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401, et seq. Pursuant to 42 U.S.C. § 405(g), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be affirmed.

Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

1

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A).  Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990).  In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment.  Id.  Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled.  The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions.  Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).   When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski.  The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole.  Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

## Discussion

Plaintiff was 33 years old at the time of the hearing before the ALJ. She has an eighth grade education. Her past relevant work includes work as housekeeper cleaner.

At the hearing before the ALJ, plaintiff testified that she had past work as a housekeeper, mainly at motels in Branson, Missouri. Her work involved cleaning rooms, and doing laundry. At her last job in 2004, she hurt her back on the job, and had a worker's compensation claim as a result. She has not worked since then. After she injured her back on the job, her back problems have worsened. She can hardly get in and out of bed; can hardly walk; has trouble with personal hygiene; has problems with intimacy with her husband; and cannot be with her children to play with and enjoy them. She testified that if they jumped on the sofa the wrong way, she would scream and cry because it jarred her back. It was also her testimony that she could not drive to the store, and had to use a cart when shopping for groceries. Even then, she needed someone's help. Plaintiff has received epidural steroid injections in a series of three, and pain medication. She had one trip to the emergency room after trying to vacuum. She stated that she had another MRI that indicated that her back was getting worse. Although surgery had been suggested, she was told she was a high risk patient because of her weight, high blood pressure, and depression. Among the pain medication, she had been prescribed Morphine, Zanaflex, and Percocet. Plaintiff testified that she had a problem controlling her medication because of the severe side effects, including nausea, dizziness, and drowsiness. Doctors have tried to adjust her medications, and tried her on Oxycontin, which caused her to have feelings of having a heart attack. When she quit taking the drug, she ended up in the emergency room with a severe anxiety attack. Plaintiff testified that she also suffers from depression because of the fact that her back

problem has adversely affected her relationship with her husband and children. It was her testimony that none of her medications helped much with the pain. Plaintiff also takes muscle relaxers, high blood pressure medication, heart medicine for heart palpitations, Cymbalta for depression, and Xanax for panic attacks. She testified that she has been on depression medication since 1998, which was the only problem she had until she hurt her back. It was her testimony that the depression has worsened because of her physical problems.

On a typical day, plaintiff testified that her husband helps her get up and dressed; he also helps with getting her situated on the sofa before she goes to work. She sleeps a lot during the day. She uses a shower wand and a shower chair. She testified that she can barely brush her hair because of the pain. Her husband does the cooking, and her daughters help with household work. She doesn't drive any longer because of the side effects of the Morphine and other medication she is on. Plaintiff did not believe she could lift more than about three to five pounds; that she could stand for five minutes; walk about twenty-five to thirty yards; and sit for a little more than ten minutes. When she sits, her legs go numb, which means that she then can't get up, and her back throbs and throbs. She is most comfortable lying down, and has to recline with a pillow between her legs because of the pain caused by a pinched nerve in her left leg. She cannot sleep at night, and if she gets any sleep it is during the day. Her doctor has recommended that she lose weight, and she thinks she is down from 330 pounds to about 301.

The ALJ found that plaintiff has not engaged in substantial gainful activity since November 26, 2004, the alleged onset date. He further found that the medical evidence established that plaintiff suffers from obesity, hypertension and degenerative disc disease of the lumbar spine, but that she does not have an impairment or combination of impairments that

4

meets or medically equals a listed impairment. It was the ALJ's finding that plaintiff was only partially credible. He found that plaintiff has the residual functional capacity ["RFC"] "to perform sedentary unskilled jobs. The ALJ concluded that she can "lift and carry ten pounds occasionally and less than ten pounds frequently. She is able to sit, with normal breaks, approximately six hours of an eight-hour work day. She is able to stand/walk, with normal breaks, approximately two hours of an eight-hour work day. She is able to occasionally bend, stoop, crouch, squat, kneel and crawl. She is unable to perform work involving exposure to hazards such as unprotected heights or dangerous moving machinery. She is unable to perform work involving exposure to extreme levels of vibration." [Tr. 24]. It was the finding of the ALJ that plaintiff cannot perform her past relevant work as housekeeping cleaner, but that she can perform the sedentary unskilled jobs of final assembler and charge account clerk, and that she is not under a disability as defined by the Act.

Plaintiff contends that the ALJ erred in his credibility determination by rejecting her claims of pain; that he failed to consider all five applicable factors to review a claim of pain; and that he ignored objective medical evidence. She asserts that the ALJ failed to consider precipitating and aggravating factors in this case, because throughout her course of treatment, she consistently reported that sitting, standing, bending, lifting, driving, and changing positions precipitated and aggravated her pain, which worsened throughout the day and required heat and medication. It is her position that the ALJ never considered what effect this would have on her ability to work at the sedentary exertional level.

She also contends that the ALJ committed reversible error by ignoring objective medical evidence when considering the necessary factor of daily activities engaged in by plaintiff. It is

5

asserted that the ALJ ignored the limitations of daily living plaintiff provided in her application, but rather, focused on daily activities that he found to be indicative of fairly normal activity, which was in contrast to her testimony at the hearing. She contends that objective medical evidence supported her claims that at the time she completed her application her pain created a disabling effect on her ability to engage in daily activities. Second, she contends that the ALJ failed to consider the objective medical evidence when considering the duration, frequency, and intensity of pain, by relying on statements by Drs. Hadi, Clarke, and Lennard, which appeared to demonstrate a strong element of secondary gain. Plaintiff contends that the ALJ ignored the fact, additionally, that the objective medical evidence demonstrates that her condition had worsened in the two years since the doctors made their comments. Third, plaintiff suggests that the ALJ ignored objective medical evidence regarding dosage, effectiveness, and side effects of medication. She contends that the ALJ ignored the fact that she had undergone facet blocks and six epidural injections that only provided temporary relief; that she had had nearly four months of physical therapy with little benefit; that there had been continual modification of her medications for pain; and that her most recent doctor had recommended surgical intervention.

Defendant contends that the ALJ properly determined plaintiff's credibility because her allegations were inconsistent with the record as a whole, that she was not compliant with her prescribed treatment, that no physician imposed limitations precluding the performance of work, and that she had a poor work history. It is asserted that the ALJ need not consider all the Polaski factors under Eighth Circuit law. Further, defendant asserts that the ALJ did not ignore objective medical evidence because he discussed her medical records and noted that she lacked clinical signs consistent with the severity of pain that she alleged would prevent her from working. The

6

ALJ found that she lacked any manifestations of pain such as weight loss due to loss of appetite, muscular atrophy, muscle spasms, prolonged bed rest, or adverse neurologic signs. Although plaintiff argues that the ALJ did not consider that surgical intervention was recommended, defendant submits that the record indicates that surgery was not performed because plaintiff needed to lose weight. Defendant also asserts that the ALJ noted that plaintiff was not always compliant with treatment. Specifically, it is noted that plaintiff failed to stop smoking even after she was told to do so; that she failed to lose weight when she was advised to do so in order to proceed with surgery; and that based on her statements regarding her daily activities, she did not exercise and remain active, as her doctors had advised her to do. It was also noted by the ALJ that plaintiff may have exhibited an interest in financial gain, which would affect her credibility because she stated she would seek her lawyer's help before answering questions on her worker's compensation claim. Further, the ALJ considered Dr. Lennard's treatment notes, which showed that she failed the validity component of her functional capacity evaluation. Defendant also submits that plaintiff's complaints at the hearing about the side effects of medication were not reported to any of her treating physicians. It is asserted that the ALJ did not err in finding that her activities of daily living were inconsistent with a complete disability, or in finding that her work history was sporadic. Defendant contends that the ALJ properly found that plaintiff could perform other work because he relied on the testimony of a vocational expert who opined, based on the credible functional limitations, that there were a significant number of jobs that plaintiff could perform.

The law is clear that "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Homstrom v. Massanari, 270 F.3d 715, 721 (8th Cir.

2001). While an ALJ who discredits a claimant's subjective complaints must make an express credibility determination explaining the reasons for doing so, Singh v. Apfel, 222 F3d 448, 452 (8th Cir. 2000), the law does not require that the ALJ explicitly discuss each factor. Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005). Rather, it is sufficient if the ALJ acknowledges and considers the factors before discounting subjective complaints. Id. at 791.

A review of the record indicates that in this case, the ALJ found plaintiff less than fully credible. He recognized that her "medically determinable impairments could reasonably be expected to produce pain and other symptoms. The severity of these symptoms, as alleged by the claimant, and the effect on the claimant's ability to work, however, are not fully supported by objective medical evidence alone." [Tr. 19-20]. The ALJ found that plaintiff's questionnaire that she completed for the agency as part of her application for benefits indicated fewer restrictions on her activities of daily living than she testified to at the hearing. He concluded that she testified at the hearing that she was "able to engage in almost no activities of daily living due to back pain." [Tr. 20]. It was his finding that "[a]lthough limited to a degree in her daily living activities as a result of her impairment, the daily activities that she does admit are inconsistent with her complaints of prolonged, consistent, disabling symptoms. The issue is not whether claimant has pain and symptoms, but whether they are so severe as to be disabling." [Id]. He further discredited her because, although she is obese, has hypertension, and degenerative disc disease, "she apparently has not lost weight or stopped smoking cigarettes, as her physicians have advised her to do." [Id.]. He noted that no physician who reviewed the imaging studies of her spine rendered the opinion that her spine condition caused disabling functional limitations. It was also his observation that the physician who assessed plaintiff's worker's compensation

8

claim, Dr. Lennard, opined that she had only a 10% whole person impairment due to her spine condition. He noted that she failed the validity test during her functional capacity evaluation. Additionally, Dr. Hadi thought she could return to light duty work, but rendered that opinion that he did not think that plaintiff would ever feel like she was ready to return to work. Another physician, Dr. Clarke, stated that he did not think she would improve until her legal case was resolved. The ALJ concluded that these statements from various physicians showed a strong element of secondary gain. He further observed that plaintiff did not exhibit physical signs that could be attributed to severe pain, and that the record failed to demonstrate that there were any significant medical findings to establish pain on such a level that she would be prevented from engaging in any work on a sustained basis. Additionally, the ALJ found that although plaintiff testified at the hearing about side effects from medication, these were not reported to any physician, nor were there any findings that she had adverse side effects from prescribed medication that could not be controlled by medication adjustments or changes. He also opined that she was not strongly motivated to work, based on her work history and her earnings. Therefore, the ALJ concluded that based on all the testimony and evidence, she was only partially credible regarding the severity and limiting effect of her pain and other symptoms. "While she has some limitations in her functioning, the record does not support her contention of debilitating, daily symptoms." [Tr. 21]. The ALJ then relied on the testimony of a vocational expert to conclude that, based on the credible functional limitations in the record, she could perform unskilled sedentary work.

After a careful review of the record as a whole, the Court concludes that there is substantial evidence to support the decision of the ALJ. Although plaintiff contends that the ALJ

erred in not delineating and discussing every Polaski factor, it is clear that the law in the Eighth Circuit requires only that the ALJ make an express credibility determination, not that he or she explicitly discuss each factor. Goff, 421 F.3d at 791. The Court finds that in this case, the ALJ sufficiently acknowledged and considered the factors before discounting some of plaintiff's subjective complaints. Given that the credibility of a claimant's testimony is primarily for the ALJ to decide, the Court finds that there is a sufficient basis to support the ALJ's credibility determination, which was based on the ALJ's thorough review of the objective medical evidence, the opinions and observations of physicians of record, and plaintiff's own testimony. Further, the ALJ relied on the opinion of a vocational expert who found that, based on the evidence, plaintiff could not return to her past relevant as she performed it, but that there were unskilled sedentary jobs that were available, which she could perform.

Based on the foregoing, the Court finds that there is substantial evidence in the record to support the ALJ's decision that plaintiff does not suffer from a disabling impairment, that she can perform the sedentary unskilled jobs of final assembler and charge account clerk, and that she is not under a disability as defined by the Act.

Accordingly, the decision of the Secretary should be affirmed.

It is therefore

ORDERED that the decision of the Secretary should be, and it is hereby, affirmed.

/s/ James C. England
JAMES C. ENGLAND, CHIEF
United States Magistrate Judge

Date:   8/4/09